NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BERTHONY EMILIEN, Individually and as Personal Representative of MARIE EMILIEN, deceased. | : : : : | Hon. Dennis M. Cavanaugh  **OPINION** |
| Plaintiff, | : : | Civil Action No. 99-5312 (DMC) |
| v. | : : | |
| STULL TECHNOLOGIES CORP., and SEA BOARD LIFE INSURANCE CO., | : : : : | |
| Defendants. | : : | |

DENNIS M. CAVANAUGH, U.S. District Judge

    This matter comes before the Court on defendant Stull Technologies, Inc.'s ("Defendant") Fed. R. Civ. P. 60(b) motion to grant relief from judgment for alleged fraud on the court. The motion was decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion to alter the judgment is DENIED.

### I. Background

**A. Procedural History**

    Plaintiff Berthony Emilien ("Plaintiff"), is a judgment creditor and the executer of the Estate of Marie Emilien ("Marie"), his deceased wife. On May 19, 2005, the District Court entered judgment for Plaintiff in the amount of $23,095.00 for medical benefits under an ERISA plan and also awarded fees and disbursements to Plaintiff's attorney in the total amount of $109,135.43, plus interest.

Defendants filed an appeal of the judgment on March 27, 2006. The Third Circuit dismissed Defendant's appeal for lack of jurisdiction on May 23, 2006. On July 5, 2006, Defendant filed this motion.

**B. Factual History**

Plaintiff is the appointed administrator of the Estate of Marie Emilien ("Marie"), his deceased wife. (Emilien Declaration ("Emilien Decl.") at ¶ 1). Prior to her death on January 7, 1999, Marie had been employed by Defendant Stull Technologies Corp. (Emilien Decl. at ¶ 2). That employment began on June 12, 1989. (Id.) According to a diagnosis rendered on October 4, 1996, Marie suffered from Human Immunodeficiency Virus Disease ("HIV") and had contracted Tuberculosis. (Emilien Decl. at ¶ 3). As a result of that illness she underwent a gradual deterioration of physical and mental health, which eventually caused her death. (Id.)

On October 21, 1998, Marie's last day working for Stull Technologies Corp., she was severely stricken and transported to the Morristown Memorial Hospital. (Emilien Decl. at ¶ 4). At the outset of Marie's term of disability that began on October 21, 1998, her hospital and medical expenses were paid for by group medical insurance provided by Defendant. (Emilien Decl. at ¶ 6). The remaining members of the Emilien family, including Plaintiff, were also insured under the same group policy. (Id.)

In early November of 1998, Plaintiff visited a pharmacy to obtain medication. He attempted to use the Stull policy to pay for the prescription. (Emilien Decl. at ¶ 9). That payment was denied with the explanation that the insurance had been cancelled. (Id.) Plaintiff contacted Stull Human Resources Department on or about November 4, 1998, and spoke to John R. McKinley ("Mr. McKinley"), a Stull Vice President, regarding the supposed cancellation of

Marie's medical benefits. (Emilien Decl. at ¶ 10). Mr. McKinley advised Plaintiff that his wife's medical insurance coverage ended because she failed to return to work by November 3, 1998, and that a letter explaining that fact had been mailed to Marie at her home address. (Id.) Plaintiff explained to Mr. McKinley that he had not received the letter and Mr. McKinley informed Plaintiff that he did not handle such matters and that further inquiries should be taken up with Connie Crawford ("Ms. Crawford"), Defendant's human resources representative. (Emilien Decl. at ¶ 11).

Plaintiff contacted Ms. Crawford and received a letter in return dated January 29, 1999, which stated that Marie's employment had been terminated on October 21, 1998. (Emilien Decl. at ¶ 12). The letter explained that because Marie had failed to respond to an earlier letter which Ms. Crawford claimed had been sent by Defendant on October 30, 1998, the medical insurance ended on November 30, 1999, and Marie's life insurance coverage ended on October 31, 1999. (Id.) Plaintiff contends that he never received nor saw this letter and claims that had he seen it he would have immediately responded by doing everything necessary to continue the medical and life insurance. (Emilien Decl. at ¶ 13). After Plaintiff was informed that his family no longer had insurance, he applied for inclusion in the medical plan offered by his own employer, Amphenol Corporation. (Emilien Decl. at ¶ 14). Plaintiff was informed that his enrollment in the Amphenol plan, operated by United Healthcare, would not become effective until January 1, 1999. (Id.)

On May 19, 2005, the District Court entered judgment for Plaintiff in the amount of $23,095.00 for medical benefits under an ERISA plan and also awarded fees and disbursements to Plaintiff's attorney in the total amount of $109,135.43, plus interest. (Pl.'s Br. 2)

Defendant filed for relief from judgment under Fed. R. Civ. P. 60(b), claiming Plaintiff's attorney created false impressions about who paid the late Marie Emilien's final hospital expenses.  (Pl.'s Br. 3).   Although Defendant previously stated that it ceased to be responsible for her medical needs after November 30, 1998, Defendant now claims that its insurance carrier did continue paying for Marie's hospital expenses and that its only error was to incorrectly advise Marie as to her cut-off date.  (Def.'s Br. 12).

Plaintiff takes the position that Defendant has not produced any clear and convincing evidence of fraud.  (Pl.'s Br. 8).  Plaintiff points out that Defendant's fraud allegations were not raised until after the Third Circuit denied Defendant's appeal.  (Pl.'s Br. 12).

## II.  Discussion

### A. Standard of Review

Under Fed. R. Civ. P 60(b)(3), the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for fraud, misrepresentation, or other misconduct of an adverse party.

### B. Scope of Review

In cases where a party moves under Federal Rule 60(b) to overturn a judgment on the basis of alleged fraud on the court, "the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from full and fairly presenting the defense." De Saracho v. Custom Food Machinery, Inc., 206 F.3d 874, 880 (9th Cir. 2000).   Furthermore, there is no right to overturn if the moving party could with "due diligence before or during the proceedings", have obtained evidence to correct the misstatement or overcome the fraud. Pac. &

Arctic Ry. And Navigation Co. v. United Transp. Union, 952 F. 2d 1144, 1148 (9th Cir. 1991).

**C.  Analysis**

Defendant claims that Plaintiff fraudulently misrepresented to the court which insurance company actually paid Plaintiff's medical bills.  (Def.'s Br. 1-12).  Defendant has repeatedly stated in past proceedings that Marie Emilien's medical insurance ended on November 30, 1998, and that it ceased to be responsible for her medical needs after that date. (Pl.'s Br. 3).  A pre-litigation letter dated October 30, 1998, from Loretta Goldstein, Defendant's Senior Human Resource Generalist to Marie stated "Your insurance will end on November 30, 1998." (Pl.'s Br. 4).  A second pre-litigation letter dated January 29, 1999, from Connie Crawford, Defendant's Human Resource Generalist, to Marie stated, "We have received no response to that letter, so medical and dental insurance coverage ended November 30, 1998." (Id.).  Defendant Stull's first brief in support of its motion for summary judgment states, "The SSP (Stull's "Special Severance Plan") stated that regular health insurance would continue until the end of the month of the Inactive Date.  For Marie, that meant coverage ended November 30." (Pl.'s Br. 6).   Defendant now adopts the position that it did indeed continue to provide coverage for Marie Emilien past its own November 30, 1998 cut-off date.

In Davenport Recycling Associates v. C.I.R., the court found that "fraud on the court must involve an unconscionable plan or scheme which is designed to improperly influence the court in the decision, preventing the opposing party from 'fully and fairly presenting his case.'" Davenport Recycling Associates v. C.I.R., 220 F.3d 1255 (11th Cir. 2000).  Plaintiff and his attorney were not involved in any unconscionable plan or scheme to defraud the court but merely relied on Defendant's representations concerning the date when Marie's medical benefits were

terminated. In reliance on Defendant's representations, Plaintiff and his attorney believed that coverage indeed ended on November 30, 1998. Plaintiff and his attorney had no reason to doubt the statements made by Defendant and its attorney, which were further supported by hospital bills for the period in question.

Marie's hospitalization invoices prior to November 30, 1998, showed Blue Cross, the provider which covered Marie Emilien through her employment with Defendant, as the only carrier. However, invoices for periods subsequent to November 30, 1998, named two carriers; Blue Cross/Blue Shield and United Healthcare. (Pl.'s Br. 7). United Healthcare was named because it was the group insurer for Berthony Emilien's employer, Amphenol Corporation. (Id.) The representations by Defendant as to the final cut-off date of the insurance coverage, together with the invoices from the hospital led the Third Circuit to reach the same conclusion as Plaintiff; that coverage ended on November 30, 1998. Emilien v. Stull Technologies Corp. *et al*. No. 04-3148 (3d Cir. 2006).

Defendant argues that its insurance carrier did continue paying for Marie's hospital expenses incurred after that date, and that its only error was to incorrectly advise Marie as to her cut-off date. (Def.'s Br. 12). Defendant failed to previously raise this issue and never protested when evidence was presented showing that it terminated Marie Emilien's coverage on November 30, 1998. (Pl.'s Br. 7).

Fraud on the court requires a "grave miscarriage of justice." U.S. v. Beggerly, 524 U.S. 47, 118 S. Ct. 1862 (1998). Defendant has not proven that there has been a "grave miscarriage of justice" nor has Defendant submitted clear and convincing evidence that Plaintiff or his attorney have fraudulently misrepresented the facts of the case. Rather, the facts on which Plaintiff relied

6

were provided by Defendant before and during the earlier litigation in this case.

There is no right to overturn a decision if the moving party could with "due diligence before or during the proceedings", have obtained evidence to correct the misstatement or overcome the fraud.  Pac. & Arctic Ry. And Navigation Co. v. United Transp. Union, 952 F. 2d 1144, 1148 (9th Cir. 1991).   In the current case, the Defendant's only explanation for its failure to develop information or seek discovery on anything relating to the medical expense issue is that its attorney was "focused" on its argument that payment from any source extinguished the claim..." (Pl.'s Br. 13).  The Defendant made no effort to correct the Plaintiff's misstatement or overcome the alleged fraud when it had an opportunity to do so.

### III.  Conclusion

Based on the foregoing, the motion by Defendant Stull Technologies, for relief from judgment based on alleged fraud on the court pursuant to Rule60(b) of the Federal Rules of Civil Procedure is **DENIED**.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh  
DENNIS M. CAVANAUGH, U.S.D.J.

Dated: 12/7/06